IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

MELISSA M. MITCHELL, *as the personal*
*representative of the Estate of Andrew T.*
*Mitchell, deceased.*                                                                    PLAINTIFF

v.                                           Case No. 6:24-cv-06080

RISER MOTORS, INC.;
CAMERON N. RISER; and
PAUL G. RISER.                                                                    DEFENDANTS

## <u>MEMORANDUM OPINION</u>

Before the Court are Motions for Summary Judgment filed separately by Defendant Riser
Motors, Inc. (ECF No. 41), Defendant Paul Riser (ECF No. 55), and Defendant Cameron Riser
(ECF No. 58). Plaintiff Melissa Mitchell ("Plaintiff") filed her Response to each. (ECF Nos. 44,
63, 65). Defendants Riser Motors, Inc., Paul Riser, and Cameron Riser have replied. (ECF Nos.
47, 67, 69). The Court finds the matter ripe for consideration.

## I.      BACKGROUND

This case arises from an accident that occurred on April 27, 2023. Defendant Cameron
Riser was driving during a heavy rainstorm when she struck and killed decedent Andrew T.
Mitchell while he was crossing an intersection. Cameron was allegedly intoxicated after drinking
for over two hours on "the Square," a popular bar area located in downtown Oxford, MS. (ECF
No. 2, at 3). Cameron drank one "pink Starburst shot" and a few sips of an alcoholic seltzer at the
Library Bar with her friends Tate Miller and Michaela Spiller. (ECF No. 66, at 3). Cameron
dropped Tate and Michaela off at Tate's home and drove to Jimmy Johns to pick up an online food
order. The accident occurred while Cameron was driving on Jackson Avenue back to Tate's house.
(ECF No. 66, at 3).

Cameron had a green light as she approached the intersection of Jackson Avenue and Fraternity Row. Andrew was crossing the intersection despite the "don't walk" sign for pedestrians. (ECF No. 66, at 3). Andrew was almost completely through the crosswalk when Cameron struck him with her vehicle. Cameron fled the scene of the accident without rendering aid or calling 911. (ECF No. 66, at 4). The police were called by bystanders who witnessed the accident. (ECF No. 66, at 3). Andrew died of blunt force trauma to the head thirty minutes after being struck by Cameron Riser. The Parties dispute whether Cameron was speeding and intoxicated when she struck and killed Andrew.

At the time of the accident, Cameron was driving a 2022 Ford Bronco Sport ("the Bronco"). The Parties agree that Cameron and Defendant Paul Riser entered into a lease agreement with Defendant Riser Motors, Inc. for the Bronco six months before the accident. (ECF No. 45, at 1). Paul is the president of Riser Motors and Cameron's father. (ECF No. 64, at 1). Though both Paul and Cameron were lessees of the Bronco, only Paul made payments on the lease. (ECF No. 46, at 2). Riser Motors was the named lessor; however, the Bronco was registered to CAB East, LLC, the leasing arm of the Ford Motor Credit Company. (ECF No. 35, at 2). On October 31, 2022, Riser Motors endorsed the Certificate of Origin to CAB East, LLC, and delivered possession of the Bronco to Cameron. (ECF No. 43-2).

On the morning following the accident, Cameron texted Paul, "Hey I'm so sorry about this dad. I hit a deer last night. What should I do?" Cameron followed up with "I'm ok just the car isn't." (ECF No. 64, at 6). When Paul asked what happened, Cameron responded that "It was pouring rain last night and a deer ran right in front of me." (ECF No. 64, at 6). Paul and Cameron then spoke on the phone for three minutes. The parties dispute the contents of this phone call. Paul asserts that he told Cameron that a driver from Riser Motors would travel to Oxford to retrieve

the damaged Bronco and provide her with a replacement vehicle. (ECF No. 64, at 6-7). Plaintiff asserts that Paul and Cameron's testimony cannot be trusted and that they conspired to hide the evidence of the Bronco from the police. (ECF No. 64, at 7). Plaintiff alleges that Paul told Cameron to move the Bronco to a spot in her driveway that would make it difficult for police to observe the damage from the street. (ECF No. 2, at 5). Following the phone call, Cameron texted Paul, "Thank you dad! I'm so sorry." Paul responded, "Please don't apologize! You aren't a deer," adding an emoji and "Lol!" (ECF No. 64, at 7). Paul sent an employee of Riser Motors to Oxford to bring the Bronco to the Riser Motors dealership in Hot Springs. When the employee arrived in Oxford, the police were questioning Cameron at her home. (ECF No. 64, at 7). Cameron was arrested and charged with leaving the scene of an accident resulting in death. (ECF No. 64, at 4). Cameron pled guilty on May 7, 2024. (ECF No. 2, at 5).

On June 6, 2024, Plaintiff filed her Complaint in this case.[1] (ECF No. 2). In the Complaint, Plaintiff alleges negligent entrustment against Paul Riser and Riser Motors, civil conspiracy against Paul Riser and Cameron Riser, and negligence against Cameron Riser. Plaintiff requests compensatory and punitive damages for all claims.

On April 22, 2025, Riser Motors filed its Motion for Summary Judgment. (ECF No. 41). In its Motion, Riser Motors argues that Plaintiff cannot show that Riser Motors negligently entrusted the Bronco to Cameron because Riser Motors did not have ownership of the Bronco when the accident occurred. (ECF No. 42, at 3-5). Riser Motors also argues that Ark. Code Ann. § 27-14-911 shields it from liability. (ECF No. 42, at 4).

On October 2, 2025, Paul Riser filed his Motion for Summary Judgment. (ECF No. 55).

---

[1] The Court has jurisdiction over this case through diversity of citizenship between the parties. Under *Erie R. Co. v. Tompkins*, a federal court sitting in diversity must apply state substantive law. 304 U.S. 64, 78 (1938). No party disputes that Arkansas law applies to Plaintiff's claims.

Paul argues that he is entitled to summary judgment on Plaintiff's negligent entrustment claim because (1) he had no right to control the Bronco at the time of the accident, (2) Cameron was a competent driver, and (3) even if Cameron was incompetent, he did not know or have reason to suspect so. (ECF No. 56, at 4). Paul also argues that he is entitled to summary judgment on Plaintiff's civil conspiracy claim because (1) Plaintiff did not allege an underlying intentional tort and (2) Plaintiff did not provide evidence of a conspiracy. (ECF No. 56, at 10). Finally, Paul argues that Plaintiff's claim for punitive damages against him should be dismissed. (ECF No. 56, at 14).

On October 7, 2025, Cameron Riser filed her Motion for Partial Summary Judgment. (ECF No. 58). Cameron argues that Plaintiff's civil conspiracy claim must fail because (1) it is not based on an underlying intentional tort and (2) Plaintiff did not provide sufficient evidence to satisfy the elements of conspiracy. (ECF No. 59, at 4). Cameron also argues that Plaintiff's claim for punitive damages against her should be dismissed. Cameron does not challenge Plaintiff's negligence claim against her.

The Court will consider all three Motions for Summary Judgment herein.

## II.    STANDARD OF REVIEW

The standard for summary judgment is well established. The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Krenik v. Cnty. of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995). This is a "threshold inquiry of . . . whether there is a need for trial — whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is material only when its resolution affects

the outcome of the case. *Id.* at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252.

In deciding a motion for summary judgment, the Court must consider all the evidence and all reasonable inferences that arise from the evidence in a light most favorable to the nonmoving party. *Nitsche v. CEO of Osage Valley Elec. Co-Op*, 446 F.3d 841, 845 (8th Cir. 2006). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The nonmoving party must then demonstrate the existence of specific material facts in the record that create a genuine issue for trial. *Krenik*, 47 F.3d at 957.

## III.    DISCUSSION

The issues before the Court are (1) whether Paul Riser and Riser Motors are entitled to summary judgment on Plaintiff's negligent entrustment claim; (2) whether Paul Riser and Cameron Riser are entitled to summary judgment on Plaintiff's civil conspiracy claim; and (3) whether Plaintiff's claim for punitive damages must be dismissed. The Court will review each in turn.

### A.  Negligent Entrustment

Plaintiff alleges that Paul Riser and Riser Motors negligently entrusted the Bronco to Cameron Riser. To prove a claim of negligent entrustment, the Plaintiff must establish: "(1) the entrustee was incompetent, inexperienced or reckless; (2) the entrustor knew or had reason to know of the entrustee's conditions or proclivities; (3) there was an entrustment of the chattel; (4) the entrustment created an appreciable risk of harm to the plaintiff and a relational duty on the part of the defendant; and (5) the harm to the plaintiff was proximately or legally caused by the negligence of the defendant." *Renfro v. Adkins*, 323 Ark. 288, 297, 914 S.W.2d 306, 310 (1996) (citation

omitted).

The Court will examine Plaintiff's claim against Defendants Paul Riser and Riser Motors in turn.

### 1. Paul Riser

Paul Riser argues that Plaintiff cannot show that (1) Cameron had a proclivity for incompetent driving, (2) he "knew or had reason to know" of Cameron's proclivity for incompetent driving, or (3) he entrusted the Bronco to Cameron.

In a claim for negligent entrustment of a vehicle, the driver's incompetence and lack of capacity in operating a vehicle must be established first. *Ponder v. Gorman*, 94 Ark. App. 159, 163, 227 S.W.3d 428, 430 (2006). Proof of the entrustee's incompetence may be demonstrated with evidence of their general reputation or specific acts. *Pace v. Davis*, 2012 Ark. App. 193, 5, 394 S.W.3d 859, 862 (2012); *see Arkansas-Louisiana Lumber Co. v. Causey*, 228 Ark. 1130, 1134, 312 S.W.2d 909, 911 (1958) ("It is conceded that, while proof of general reputation is preferable, such reputation may also be shown by evidence of specific acts.").

Plaintiff argues that Cameron's driving record establishes that she has a proclivity for incompetent driving. (ECF No. 63, at 3). In her eight years of driving before the accident, Cameron received two speeding tickets and was involved in two collisions. (ECF No. 64, at 3). Both speeding tickets were issued in 2022 for driving approximately 15 mph above the speed limit. (ECF No. 55-3). The first collision was a fender bender that occurred in 2017. According to the accident report, Cameron was cited for "careless and prohibited driving" but was not suspected of alcohol use. (ECF No. 55-4). The second collision was a minor fender bender in 2021, in which Cameron was rear ended. (ECF No. 64, at 3). Neither collision resulted in personal injuries, and the 2021 collision was so minor that it did not result in an accident report or notation on Cameron's

6

driving record.  (ECF No. 64, at 3).

Paul argues that Cameron's driving record reveals only minor driving infractions that are insufficient to render Cameron an incompetent driver.  Paul compares Cameron's record to those which courts have found no incompetence on the part of the entrustee-driver.  *See Ponder*, 94 Ark. App. at 162-63, 227 S.W.3d at 430 (holding that the driver was not incompetent because he had no history of traffic violations and was not under the influence at the time of the accident); *see also Fleming v. Stifolter*, 656 F.Supp.2d 764, 773 (W.D. Tenn. 2009) (holding that the operator of a jet ski was not incompetent because there was no evidence that the operator had a history of operating watercrafts in a reckless manner or that he was under the influence at the time of the accident) (applying Arkansas law); *see also Pryor v. Brown & Root USA, Inc.*, 674 So.2d 45, 51-52 (Ala. 1995) (holding that an entrustee's driving record of two speeding tickets and a suspended prosecution of a DUI charge over a ten-year period was not sufficient to show that the entrustee was incompetent); *see also Eyrich v. Estate of Waldemar*, 765 N.E.2d 504, 506-7 (Ill. App. Ct. 2002) (finding that the entrustee's "poor driving record" of one speeding ticket and one ticket for having tinted windows does not support the conclusion that the entrustee posed a risk of harm to others); *see also Matysyuk v. Pantyukhin*, 595 S.W.3d 543, 549-51 (Mo. Ct. App. 2020) (concluding that a two traffic offenses, including a severe collision, that took place more than two years prior to the at-issue accident did not establish a habit of recklessness).  Plaintiff argues that Cameron's driving record extends beyond those of the entrustees in the cases cited by Paul.

Courts routinely recognize a driver's history of traffic violations as evidence that the driver is incompetent.  *See LeCave v. Hardy*, 73 S.W.3d 637, 641 (Mo. Ct. App. 2002) (collecting cases). The two cases cited by the Parties that apply Arkansas law noted the driver's lack of previous traffic violations in holding that the plaintiff failed to demonstrate that the driver was incompetent.

*See Ponder*, 94 Ark. App. at 162-63, 227 S.W.3d at 430; *see also Fleming*, 656 F.Supp.2d at 773 (applying Arkansas law).  Further, a review of caselaw from other states demonstrates that several traffic violations in a short period of time close to the accident support submitting the question of incompetence to the jury.  *See Swicegood v. Cooper*, 459 S.E.2d 206, 208 (N.C. 1995) (submitting the issue of incompetence to the jury when the driver had three movement violations and six speeding convictions, including one for speeding over sixty miles per hour, within a span of six years); *see also Thompson v. Havard*, 235 So.2d 853, 857 (Ala. 1970) (holding that evidence of eleven moving violations within three years prior to the accident was sufficient evidence to submit the issue of incompetency to the jury); *see also Broesche v. Bullock*, 427 S.W.2d 89, 93 (Tex. App. 1968) (holding that evidence of seven moving violations, a warning letter, and driving restrictions within a three year period prior to the accident was sufficient to submit to the jury the question of incompetency); *see also Tortora v. General Motors Corp.*, 130 N.W.2d 21, 22-23 (Mich. 1964) (holding that a jury could find a driver incompetent based on twelve moving violations during a period of less than five years before the accident).

Compared to these cases, the Court declines to find that Cameron's driving record alone presents sufficient evidence that a reasonable jury could find she was an incompetent or habitually reckless driver.  *See Anderson*, 477 U.S. at 255 ("[T]he trial judge's summary judgment inquiry as to whether a genuine issue exists will be whether the evidence presented is such that a jury applying [the] evidentiary standard could reasonably find for either the plaintiff or the defendant.").  Within a period of seven years prior to the accident, Cameron only received three traffic violations on her driving record: two speeding tickets in 2022 and a fender bender in 2017.  *See Pryor*, 674 So.2d at 51-52 (holding that a driving record of two speeding tickets and a suspended DUI charge over ten years was not sufficient to show that the driver was incompetent).

Cameron's driving record, however, is not the only basis on which Plaintiff asserts Cameron's alleged incompetency. Plaintiff alleges that Cameron was intoxicated when the accident occurred. (ECF No. 2, at 4). Evidence that a driver was under the influence of drugs or alcohol at the time of the accident is sufficient to show incompetence. In *Ponder v. Gorman*, for example, the plaintiff claimed a father negligently entrusted his car to his son who he knew had a history of marijuana use. 94 Ark. App. at 162, 227 S.W.3d at 430. The Arkansas Court of Appeals held that the plaintiff failed to prove incompetence because the son had never received a traffic citation *and* because there was "no evidence that he was under the influence of alcohol or other drugs at the time of the accident." *Id.* at 163, 430; *see also Fleming*, 656 F.Supp.2d at 773 (applying Arkansas law to hold that the plaintiff failed to prove incompetence because there was no evidence that the jet ski operator was under the influence of drugs or alcohol at the time of the accident). In the instant case, unlike in *Ponder* and *Fleming*, the parties dispute whether Cameron was under the influence of alcohol on the night of the accident. (ECF No. 56, at 10). The question of whether Cameron was intoxicated at the time of the accident, and thus an incompetent driver, is one for the jury.

The inquiry does not stop there, however, because Plaintiff must also establish that Paul had knowledge of Cameron's alleged proclivity for driving under the influence. In other words, Plaintiff must show that Paul knew or should have known that Cameron was driving drunk that night or was in the habit of doing so. *See Renfro*, 323 Ark. at 297, 914 S.W.2d at 310.

In *Arkansas-Louisiana Lumber Co. v. Causey*, for example, a driver was operating his employer's truck under the influence of alcohol when he collided with the plaintiff. 228 Ark. 1130, 1131, 312 S.W.2d 909, 910 (1958). The Supreme Court of Arkansas found that the evidence of four instances of driving under the influence over a period of several years was sufficient to

establish a pattern of drunk driving and incompetence.  *Id.* at 1133-34, 911.  Testimony was disputed as to whether the employer had been told that the driver previously drove his truck while he was "so drunk he didn't know what he was doing." *Id.* Thus, the Supreme Court of Arkansas concluded that the question of the employer's knowledge of the driver's incompetence was a question for the jury.  *Id.* (noting that witness credibility is a jury issue).

In the instant case, Plaintiff alleges that at the time of the accident, Paul knew of Cameron's propensity to drive the Bronco under the influence of alcohol.  However, Plaintiff produces no proof that Paul knew Cameron was driving intoxicated on the night of the incident or that she had a habit of driving under the influence.  Instead, Plaintiff only points to Paul's testimony that he knew of Cameron's speeding tickets and prior collisions.  (ECF No. 62, at 5).  The Court finds that Plaintiff fails to show that Paul knew or should have known that Cameron was either driving drunk at the time of the accident or had the proclivity to do so.  Accordingly, Defendant Paul Riser's motion for summary judgment as to Plaintiff's negligent entrustment claim is granted.

### 2.  Riser Motors

Plaintiff also asserts a claim of negligent entrustment against Riser Motors.  (ECF No. 2, at 11).  Plaintiff alleges that when Riser Motors leased the Bronco to Paul and Cameron, it knew of Cameron's proclivity for incompetent driving because Paul is both Cameron's father and the president of Riser Motors.  (ECF No. 2, at 12-13).  Plaintiff's allegations of Cameron's proclivity for incompetent driving and the extent of Riser Motors's knowledge of such mirrors Plaintiff's allegations against Paul Riser.

Riser Motors argues that Plaintiff failed to establish that Riser Motors entrusted the Bronco to Cameron Riser.  Under Arkansas law, ownership interest, or at least the "right to control" the use of the vehicle, is necessary to entrust a vehicle to another.  *See Mills v. Crone*, 63 Ark. App.

45, 50, 973 S.W.2d 828, 831-32 (1998) (upholding a grant of summary judgment for appellees on the issue of negligent entrustment when the appellees were not owners of the vehicle and had no right to control its use); *see also Renfro*, 323 Ark. at 296-97, 914 S.W.2d at 310 (holding that the question of ownership was a genuine issue of material fact that precluded summary judgment on a negligent entrustment claim).

The parties dispute whether Riser Motors entrusted the Bronco to Cameron. Riser Motors argues that Arkansas Code § 27-14-911 shields it from liability in this case because it transferred ownership of the Bronco by endorsing the Certificate of Origin and delivering possession of the Bronco to Paul and Cameron before the accident.[2] (ECF No. 41, at 5). Riser Motors also argues that the Ford Motor Credit Company, not Riser Motors, held ownership of the Bronco on the date of the accident. (ECF Nos. 42, at 3-5; 45-3, at 34).

Plaintiff argues that § 27-14-911 does not apply in this case. (ECF No. 44, at 2). Plaintiff further argues that Riser Motors maintained an ownership interest in the Bronco after it leased it to Paul and Cameron because entry into a lease does not extinguish the lessor's interest. Plaintiff then argues that even if the lease gave Paul and Cameron conditional ownership of the Bronco,

---

[2] Ark. Code Ann. § 27-14-911 provides that:

The owner of a motor vehicle who has made a bona fide sale or transfer of his or her title or interest and who has delivered possession of the vehicle to the purchaser or transferee shall not be liable for any damages thereafter resulting from negligent operation of the vehicle by another. Furthermore, the selling or transferring owner, upon delivery of possession, shall not be liable for any such damage or negligence if one (1) of the following requirements is fulfilled:

(1) Delivered the certificate of title, properly endorsed and dated with the date of the endorsement, to the purchaser or transferee;

(2) Delivered to the Office of Motor Vehicle or placed in the United States mail, addressed to the Office of Motor Vehicle, the notice as provided in § 27-14-916; or

(3) Delivered to the Office of Motor Vehicle or placed in the United States mail, addressed to the Office of Motor Vehicle, the appropriate documents and fees for registration of the motor vehicle to the new owner pursuant to the sale or transfer.

Riser Motors had cause to terminate the lease due to false and misleading statements by the lessees. (ECF No. 44, at 10-11).

The Court finds it unnecessary to determine who held ownership interest in the Bronco at the time of the accident because Plaintiff cannot demonstrate the first and second elements of negligent entrustment, as discussed above. The driver's incompetence and lack of capacity in operating a vehicle must be established before addressing whether the vehicle was entrusted. *See Ponder*, 94 Ark. App. at 163, 227 S.W.3d at 430. The crux of Plaintiff's negligent entrustment claim against Riser Motors is that it knew about Cameron's driving record by way of Paul Riser through his role as both Cameron's father and president of Riser Motors, and it still leased the Bronco to Cameron. (ECF No. 44, at 6). Since the Court has found that a reasonable jury could not find that Cameron was an incompetent driver based on her record and that Plaintiff offers no evidence that Paul knew or should have known that Cameron was driving under the influence or had the proclivity to drive drunk, Plaintiff's negligent entrustment claim must also be dismissed against Riser Motors.

### B. Civil Conspiracy

Plaintiff also alleges that Cameron Riser and Paul Riser conspired to destroy or conceal evidence of Cameron's intoxication on the night of the accident and of the Bronco itself. (ECF No. 2, at 16). To prove civil conspiracy, Plaintiff must show "that two or more persons have combined to accomplish a purpose that is unlawful or oppressive or to accomplish some purpose, not in itself unlawful, oppressive or immoral, but by unlawful, oppressive or immoral means, to the injury of another." *Chambers v. Stern*, 347 Ark. 395, 404, 64 S.W.3d 737, 743 (2002) (citing *Dodson v. Allstate Ins. Co.*, 345 Ark. 430, 445, 47 S.W.3d 866, 876 (2001)). Civil conspiracy is "not actionable in and of itself, but recovery may be had for damages caused by acts committed

pursuant to the conspiracy." *Id.* Further, civil conspiracy is "an intentional tort requiring specific intent to accomplish the contemplated wrong." *Id.* A plaintiff may prove civil conspiracy through "direct evidence of an actual agreement or understanding between conspirators, but it may also be shown by circumstantial evidence." *Id.* (citing *Mason v. Funderburk*, 247 Ark. 521, 529, 446 S.W.2d 543, 548 (1969)).

Plaintiff alleges the following facts to support her claim of civil conspiracy against Paul and Cameron. (ECF No. 2, at 15-16). After an evening out drinking on "the Square," Cameron hit Andrew with her Bronco. Rather than call 911, Cameron called Paul to seek instruction on how to conceal the incident because she recognized that she may be cited for driving under the influence. Paul instructed Cameron not to call the police in order to allow her additional time to sober up. Paul also told Cameron to move the Bronco to a location where the damage would be hidden from view. Paul and Cameron conspired to have the Bronco towed out of Oxford and provide Cameron with a replacement vehicle by the time the police identified Cameron as a suspect.

Plaintiff argues that Cameron's phone data provides evidence of Cameron and Paul's act of conspiracy. The phone records revealed that Cameron made several internet searches related to the hit-and-run the night of the accident, including searching "what happens if you accidentally run over someone." (ECF No. 64-7, at 132-37). Though Cameron did not call Paul on the night of the accident, her phone records reveal that she did text him early the next morning. Cameron's first message said "Hey I'm so sorry about this dad. I hit a deer last night. What should I do." (ECF No. 64-6). When Paul responded by asking "What happened[,]" Cameron texted that "It was pouring rain last night and a deer ran right in front of me." (ECF No. 64-6). Paul then called Cameron and the two spoke for around three minutes. The parties dispute what was said over this

phone call.  Paul and Cameron assert that during the call Paul checked on Cameron and arranged to send a driver to retrieve and take the Bronco to an auto shop in Hot Springs and provide Cameron with a replacement vehicle. (ECF Nos. 56, at 12; 59, at 5-6).  Plaintiff disputes the contents of this phone call and questions the credibility of Paul and Cameron's testimony.  (ECF No. 64, at 7). Plaintiff alleges that Paul suggested Cameron move the Bronco to a spot in her driveway that would make it difficult for the police to observe the damage to the vehicle.[3]  (ECF No. 2, at 5).

Both Paul and Cameron argue that Plaintiff's civil conspiracy claim fails because Plaintiff alleges no underlying intentional tort claim and because Plaintiff cannot produce evidence to meet the elements of conspiracy.  The Court will analyze Plaintiff's civil conspiracy claim against Paul and Cameron separately.

### 1. Paul Riser

The Court finds it unnecessary to determine whether Plaintiff has sufficiently produced evidence of a conspiracy on the part of Paul because a claim of civil conspiracy requires an underlying tort, and the Court has dismissed Plaintiff's negligent entrustment claim against Paul. Civil conspiracy under Arkansas law is "not a separate tort and must be based on the underlying tortious activity." *Varner v. Peterson Farms*, 371 F.3d 1011, 1016 (8th Cir. 2004) (applying Arkansas law); *see also Chambers*, 347 Ark. at 404, 64 S.W.3d at 743 ("[A civil] conspiracy is not actionable in and of itself."); *see also KBX, Inc. v. Zero Grade Farms*, 2022 Ark. 42, 19, 639 S.W.3d 352, 364 (2022) (holding that the evidence did not support the jury's verdict on the plaintiff's civil conspiracy claim when the underlying torts to which it was attached were dismissed).  Accordingly, the Court finds that Plaintiff's claim for civil conspiracy against Paul

---

[3] The Court notes that besides placing doubt on the credibility of Paul and Cameron's testimony, Plaintiff fails to produce evidence demonstrating that Paul told Cameron to conceal the Bronco.  To survive a motion for summary judgment, Plaintiff must show sufficient evidence that would permit a finding in her favor more than "mere speculation."  *See Brinkly v. Entergy Operations, Inc.*, 602 F.3d 928, 931 (8th Cir. 2010).

Riser fails.

### 2. Cameron Riser

The Court first turns to Cameron's argument that an underlying claim of negligence cannot support a civil conspiracy claim because negligence is not an intentional tort. In her Motion for Partial Summary Judgment, Cameron does not challenge the negligence claim asserted against her. Thus, for a claim of civil conspiracy to be found, it must be based on the underlying tort of negligence alleged against Cameron. *See Touhey v. Chenal Healthcare, LLC*, 173 F.Supp.3d 804, 812 (E.D. Ark. 2016) ("A plaintiff alleging a claim for civil conspiracy must state a prima facie case for the underlying tort in order to support a conspiracy claim.").

The parties disagree as to whether Arkansas courts require the underlying tort to be an intentional tort. Cameron argues that negligence alone cannot be the basis of a civil conspiracy since civil conspiracy requires intentional conduct. (ECF No. 59, at 4). Plaintiff argues that case law supports civil conspiracy claims where the underlying tort is one of negligence. In support, Plaintiff cites to two Arkansas cases in which she argues that the court recognized civil conspiracy based only on a claim of negligence.

First, Plaintiff asserts that the reversal of a grant of summary judgment dismissing civil conspiracy and negligence claims by the Arkansas Court of Appeals in *Guy Maris Trust v. Truemper* demonstrates that Arkansas courts allow jury trials based on only claims of civil conspiracy and negligence. *See* 2012 Ark. App. 232, at 11, 405 S.W.3d 427, 433 (2012). The Court disagrees with Plaintiff's reading of *Truemper*. In *Truemper*, the plaintiffs sued based on a timber-cutting statute, conversion, negligence, and civil conspiracy after the defendants cut down the plaintiff's trees. *Id.* at 1-3, 428-29. The Arkansas Court of Appeals reversed the circuit court because there remained a question of material fact as to the parties' intent in their conversion claim.

15

*Id.* at 9-11, 433.  Put simply, the evidence of whether the defendants were given permission to cut down the plaintiff's trees was in dispute. The Arkansas Court of Appeals also reversed the circuit court's grant of summary judgment on both the civil conspiracy and negligence claims because those claims relied on the same evidence that was held to be in dispute for the conversion claim. *Id.* Thus, the underlying tort of the plaintiff's civil conspiracy claim was not their negligence claim, but rather the conversion claim, which is an intentional tort.  *See McQuillan v. Mercedes-Benz Credit Corp.*, 331 Ark. 242, 247, 961 S.W.2d 729, 732 ("[The intent] required [for a conversion claim] is that there be intent to exercise control or dominion over the goods.").

Second, Plaintiff relies on the fact that the plaintiff in *Ganey v. Kawasaki Motors Corp., U.S.A.* alleged civil conspiracy alongside claims of negligence, breach of warranty, and strict products liability to argue that civil conspiracy need not be based on an underlying intentional tort. *See* 466 Ark. 238, 234 S.W.3d 838 (2006).  However, in that case, the Supreme Court of Arkansas affirmed the trial court's dismissal of the plaintiff's complaint on personal jurisdiction grounds without addressing the merits of the claims or the feasibility of basing a civil conspiracy claim on non-intentional torts.  *Id.* at 253, 848.  The Court finds unpersuasive Plaintiff's assertion that the fact that a plaintiff has alleged civil conspiracy alongside non-intentional torts before shows that Arkansas courts allow negligence as the underlying tort to civil conspiracy.

Further, while other states have explicitly held that civil conspiracy may be based on an underlying claim of negligence, Arkansas courts have not done so.  *See Wright v. Brooke Group Ltd.*, 652 N.W.2d 159, 173 (Iowa 2002) (ruling that while other states require a civil conspiracy claim be based on an intentional tort, a plaintiff in Iowa may base a claim of civil conspiracy on an underlying tort of negligence).  Rather, Arkansas courts appear to trend towards requiring that civil conspiracy must be based on an underlying intentional tort.  In *KBX, Inc. v. Zero Grade*

*Farms*, for example, the Supreme Court of Arkansas held that evidence did not support a jury verdict on the plaintiffs' conspiracy claim because the plaintiffs failed to prove that the defendants conspired to commit the underlying torts of deceit, constructive fraud, or conversion.  2022 Ark. 12, at 19, 639 S.W.3d 352, 364 (2022). In the "absence of an agreement to commit an underlying intentional tort," the Arkansas Supreme Court held that "substantial evidence did not support the jury's verdict on the [defendant's] conspiracy claim." *Id.; see also Stouffer v. Kralicek Realty Co.*, No. CA 04-502, 2005 WL 605597, at *4 (Ark. Ct. App. 2005) ("Because civil conspiracy requires a specific intent to commit a wrong, appellant's allegations of negligence cannot support this cause of action."); *see also Foster v. Boch Industries, Inc.*, No. 08-CV-5093, 2009 WL 485407, at *5 (W.D. Ark. Feb. 26, 2009) (stating that in order to establish a civil conspiracy claim, the plaintiff must prove that "an intentional tort can be proven on the part of one conspirator[.]"); *see also* Ark. Model Jury Instructions 714-Civil (2025 ed.) (noting that the plaintiff must prove all essential elements on their underlying *intentional* tort claim to recover damages for civil conspiracy).

Regardless, assuming that Plaintiff may recover for civil conspiracy based on an underlying tort of negligence, Plaintiff's negligence claim is not the tort underlying her civil conspiracy claim. In her negligence claim, Plaintiff alleges that Cameron negligently hit and killed Andrew with her car and fled the scene while under the influence of alcohol.  (ECF No.  2, at 5-6)  Plaintiff asserts that she does not claim that Paul and Cameron conspired to kill Andrew but rather alleges that Cameron and Paul conspired to cover-up Cameron's involvement in the accident.  (ECF No. 65, at 4).  Plaintiff does not assert that an agreement existed between Cameron and Paul to commit the tort of negligence that resulted in Andrew's death.[4]  *See KBX, Inc.*, 2022 Ark. at 19, 639 S.W.3d at

---

[4] The Supreme Court of Iowa expressly allows civil conspiracy claims based on an underlying tort of negligence. *Wright*, 652 N.W.2d at 174.  However, even applying the *Wright* analysis to the instant case, Plaintiff's civil conspiracy claim would fail.  In *Wright*, the court reasoned that "[s]o long as the underlying actionable conduct is of the type that one can plan ahead to do, it should not matter that the legal system allows recovery upon a mere showing of

364.  Thus, the underlying tort that Cameron and Paul allegedly conspired to commit was not the tort of negligence.  Accordingly, the Court finds that the civil conspiracy claim against Cameron Riser must be dismissed.

### C.  Punitive Damages

The final issue before the Court is whether Plaintiff may seek punitive damages against Cameron Riser in relation to her remaining negligence claim. Summary judgment on punitive damages is only appropriate "if the evidence [is] such that no reasonable jury could [find] grounds for awarding punitive damages." *In re Aircraft Accident at Little Rock*, 351 F.3d 874, 876 (8th Cir. 2003) (applying Arkansas law).

To recover punitive damages under Arkansas law, a plaintiff must prove:

> that the defendant is liable for compensatory damages and that either or both of the following aggravating factors were present and related to the injury for which compensatory damages were awarded:
>
> (1)  The defendant knew or ought to have known, in light of the surrounding circumstances, that his or her conduct would naturally and probably result in injury or damage and that he or she continue the conduct with malice or in reckless disregard of the consequences, from which malice may be inferred.
>
> (2)  The defendant intentionally pursued a course of conduct for the purpose of causing injury or damage.

Ark. Code Ann. § 16-55-206.  A plaintiff must prove this by clear and convincing evidence. Ark. Code Ann. § 16-55-207.  The standard for punitive damages is high because negligence, or even gross negligence, is insufficient to support a claim for punitive damages.  *Nat'l By-Prod., Inc.*

---

unreasonableness (negligence) rather than requiring an intent to harm." *Id.* at 173.  The *Wright* court gives the example of manufacturers who agree to suppress information about their product to facilitate its sales and, in doing so, subject themselves to liability for failure to warn of the risks of using the product.  *Id.* In that example, the negligent products liability tort is the *result* of the manufacturer's intentional conspiracy.  In the instant case, in contrast, the underlying tort of negligence alleged is not the type that one plans to do ahead or the result of Cameron and Paul's alleged conspiracy.

*v. Searcy House Moving Co.*, 292 Ark. 491, 494, 731 S.W.2d 194, 196 (1987).

In determining whether there is sufficient evidence to award punitive damages in a negligence action, "it must appear that the negligent party knew, or had reason to believe, that his act of negligence was about to inflict injury, and that he continued in his course with a conscious indifference to the consequences, from which malice may be inferred." *D'Arbonne Constr. Co., Inc. v. Foster*, 354 Ark. 304, 308, 123 S.W.3d 894, 898 (2003). The Supreme Court of Arkansas has repeatedly held that malice may be inferred from the operation of a motor vehicle while impaired by alcohol. *Honeycutt v. Walden*, 294 Ark. 440, 442, 743 S.W.2d 809, 810 (1988) (collecting cases).

Cameron argues that punitive damages are inappropriate for two reasons: (1) her actions of leaving the scene of the accident lack a proximate connection to the injury and (2) Plaintiff's allegations of her impairment during the accident are not supported by the facts developed in discovery. The Court finds both unpersuasive.

First, Cameron compares her post-accident actions to those by the defendant in *Freeman v. Anderson*, where the Supreme Court of Arkansas affirmed the trial court's exclusion of the evidence of the defendant fleeing the scene of the accident, which the plaintiff proffered to establish punitive damages. 279 Ark. 282, 286-87, 651 S.W.2d 450, 452-53 (1983). In *Freeman*, the defendant changed lanes, forcing another vehicle to swerve across the center line into the path of the plaintiff's vehicle and causing a collision. *Id.* at 283, 450. The defendant did not stop at the scene of the accident. *Id.* The plaintiff requested punitive damages, alleging that the defendant fleeing the scene showed a willful and wanton disregard for her welfare. *Id.* The trial court excluded evidence of defendant's flight, ruling that punitive damages were not recoverable on events occurring after the collision because they had no proximate causation. *Id.* In affirming the

trial court, the Supreme Court of Arkansas reasoned that nothing from the evidence of the defendant's flight indicated that the defendant "knew or had reason to believe that his conduct [of fleeing the scene] would likely cause injury." *Id.* at 287, 452.

The pertinent question is whether Cameron "knew or had reason to believe" that her action of leaving the scene after hitting Andrew would likely cause injury.  The Court finds that there is sufficient evidence for a reasonable jury to find that she did.  Cameron's testimony that she began searching the internet "what happens if you run over someone" minutes after hitting Andrew suggest that she at least "had reason to believe" her action of fleeing the scene would likely cause injury.  (ECF No. 66-2, at 135).  Additionally, Plaintiff's negligence claim also alleges that Plaintiff was negligent for driving intoxicated, which the Arkansas Courts have routinely held is grounds for awarding punitive damages.  *See Honeycutt*, 294 Ark. at 442, 743 S.W.2d at 810.

Second, Cameron argues that punitive damages should be barred because Plaintiff has not established enough evidence conclusively showing that she was intoxicated at the time of the accident.  This evidence, however, is also disputed.  Cameron asserts that she was not intoxicated because testimony and video footage demonstrate that she only drank one shot and took a few sips of a "White Claw" within a two-hour period before leaving the bar.  (ECF No. 59, at 9-10).  Plaintiff responds that Cameron testified that she had a "very, very low tolerance for alcohol on the date of [the accident]" and that she was drinking on an empty stomach.  (ECF No. 65, at 9).  The parties also dispute whether Cameron applied her brakes within the normal range of perception and reaction.  (ECF Nos. 59, at 10; 65, at 9).  Accordingly, the Court finds that a reasonable jury could find that Cameron knew or had reason to believe that driving under the influence and leaving the scene of the accident would likely cause injury.  Thus, Cameron's motion for summary judgment on Plaintiff's request for punitive damages is denied.

## IV.    CONCLUSION

For the reasons stated above, the Court finds that Defendant Paul Riser's Motion for Summary Judgment (ECF No. 55) and Defendant Riser Motor's Motion for Summary Judgment (ECF No. 41) should be and hereby are **GRANTED**.  All claims against Defendants Paul Riser and Riser Motor are **DISMISSED WITH PREJUDICE**.

The Court also finds that Defendant Cameron Riser's Motion for Partial Summary Judgment (ECF No. 58) is hereby **GRANTED IN PART** and **DENIED IN PART**.  Plaintiff's negligence claim against Defendant Cameron Riser remains in the case, as does her request for punitive damages. All other claims against Defendant Cameron Riser are **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**, this 14th day of November, 2025.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge